UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

THOMAS GESUALDI, LOUIS BISIGNANO,
MICHAEL O'TOOLE, MICHAEL C. BOURGAL,
DARIN JEFFERS, JOSEPH A. FERRARA, SR.,
FRANK H. FINKEL, MARC HERBST, DENISE
RICHARDSON, and THOMAS F. CORBETT, as
Trustees and Fiduciaries of the Local 282 Welfare
Trust Fund, the Local 282 Pension Trust Fund, the
Local 282 Annuity Trust Fund, the Local 282 Job
Training Trust Fund, and the Local 282 Vacation
and Sick Leave Trust Fund,

Civil Action No.:

                      Plaintiffs,

        - against -

METROPOLITAN SEWER INC., HERSCHEL, LLC
and JOHN DOE COMPANIES 1-99,

                    Defendants.

---------------------------------------------------------------------x

## COMPLAINT

Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael C.

Bourgal, Darin Jeffers, Joseph A. Ferrara, Sr., Frank H. Finkel, Marc Herbst, Denise Richardson,

and Thomas F. Corbett, as Trustees and fiduciaries of the Local 282 Welfare Trust Fund, the

Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training

Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (collectively, the "Funds"),

for their complaint allege as follows:

## INTRODUCTION

This is an action brought under the Employee Retirement Income Security Act

("ERISA") and the Labor Management Relations Act ("LMRA").

This is an action against Metropolitan Sewer Inc. ("Metropolitan Sewer") to:

(a) collect contributions and attendant damages due to the Funds pursuant to underpaid and late-

paid remittance reports for various weeks between August 3, 2016 and February 28, 2017;
(b) $25,238.63 in contributions due to the Funds, plus attendant damages due, pursuant to an
agreed-upon procedures engagement ("audit") of Metropolitan Sewer's books and records for the
period from August 27, 2015 through September 21, 2016; (c) obtain an audit of Metropolitan
Sewer's books and records and collect corresponding contributions and damages due for the
period from September 22, 2016 through February 28, 2017; and (e) collect $450,388.00 in
withdrawal liability principal, plus attendant damages due to the Local 282 Pension Trust Fund
(the "Pension Fund").

The Trustees further seek to hold Herschel, LLC ("Herschel") and John Doe
Companies 1-99 jointly and severally liable with Metropolitan Sewer for the $450,388.00 in
withdrawal liability principal, plus attendant damages due to the Pension Fund, because they fall
within Metropolitan Sewer's "controlled group" as that term is defined by statute.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §1331
and Sections 502(e)(1), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e)(1), 1132(f), and
1451(c).

2.      Venue lies in this district under 29 U.S.C. §1132(e)(2), as the Funds are
administered in this district.  Venue also lies in this district under 29 U.S.C. § 185(a).

## THE PARTIES

3.      Plaintiffs are Trustees and fiduciaries of the Funds within the meaning of
29 U.S.C. § 1002(21)(A), as they have discretion and control over the assets and administration
of the Funds.

4.      The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. § 1002(3) and § 1002(37), with their principal place of business at 2500 Marcus Avenue, Lake Success, New York 11042.

5.      The Funds are jointly administered by a Board of Trustees, comprised of an equal number of labor and management representatives in accordance with Section 302(c)(5) of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 186(c)(5).

6.      The Funds are maintained pursuant to a Restated Agreement and Declaration of Trust (the "Trust Agreement") for the purposes of collecting and receiving contributions from employers bound to collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters (the "Union") and providing benefits to eligible participants.

7.      The collective bargaining agreements and the Trust Agreement set forth "terms of the plan," establishing that the Trustees are fiduciaries responsible for administering the Funds and that the Funds are beneficiaries of the collective bargaining and Trust Agreement terms.  Accordingly, the Trustees have legal right to bring suit under 29 U.S.C. § 1132(a)(3) and 29 U.S.C. § 1145.

8.      Upon information and belief, Metropolitan Sewer is, and at times relevant to this action has been, engaged in the trucking business within the State of New York, with its principal place of business at 1324 Herschell Street, Bronx, New York 10461.

9.      Metropolitan Sewer is, and at all times relevant to this action has been, an "Employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and the Trust Agreement.

10.     Upon information and belief, Herschel is, and at all times relevant to this action has been, a New York corporation, with its principal place of business at 1324 Herschell Street, Bronx, New York 10461.

11.     Herschel is, and at times relevant to this action has been, an "employer" within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

12.     Herschel is, and at times relevant to this action, been engaged in real estate ownership and/or management.

13.     John Doe Companies 1-99 are fictitious defendants representing yet to be determined trades or businesses under common control with Metropolitan Sewer.

## FACTUAL BASIS FOR CLAIM

The Collective Bargaining Agreement, the Trust
Agreement and the Obligation to Contribute to the Funds

14.     At times relevant to this action, Metropolitan Sewer was party to collective bargaining agreements with the Union.

15.     Metropolitan Sewer is bound to the New York City Heavy Construction & Excavating Contracts for the periods from July 1, 2009 through June 30, 2013 (the "2013 CBA") and July 1, 2013 through June 30, 2017 (the "2017 CBA") (The 2013 CBA and the 2017 CBA collectively are "the CBAs.")

16.     At times relevant to this action, the CBAs have required Metropolitan Sewer to contribute to the Funds on behalf of its employees covered by the CBAs, at specified rates for each hour of covered employment, subject to certain limitations set forth in the CBAs.

17.     Along with the contributions, Metropolitan Sewer is also required to submit remittance reports to the Funds.  The remittance reports provide Metropolitan Sewer's

statement of the employees who performed work covered by the CBAs and the number of hours each such employee worked in covered employment.

18.     The CBAs bind Metropolitan Sewer to the Trust Agreement.

19.     The Trust Agreement provides that if Metropolitan Sewer fails to remit contributions by the date due, Metropolitan Sewer is liable to the Funds for (i) the delinquent contributions; (ii) interest at the rate of 1.5% per month (18% per year); (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs.

20.     The CBAs provide that if Metropolitan Sewer fails to remit contributions to the Funds when due, the Funds are entitled to the remedies set forth in Section 502(g)(2) of ERISA.

The Trust Agreement and the Obligation to Permit Audits

21.     The Trust Agreement requires an Employer to submit to periodic audits. Specifically, the Trust Agreement provides that "[t]he Trustees may at any time audit the pertinent books and records of any Employer in connection with" the Employer's contributions to the Funds.

22.     The Trust Agreement defines "pertinent books and records" to include but not be limited to:

> (a)     Payroll records, including payroll journals, time cards, print-outs, ledgers or any other form of payroll record;
>
> (b)     Payroll tax records submitted to federal and state governments, including Forms 941, W-2;
>
> (c)     Complete business income tax returns;
>
> (d)     Cash disbursements records;
>
> (e)     General ledgers;

(f) Records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and

(g) Any other records specifically requested by the Funds' auditors, including the classification of Employees, their social security numbers, and the amount of wages paid and hours worked.

23. The Trust Agreement additionally provides that pertinent books and records of an Employer include:

> the books and records of any business which is bound by a collective bargaining agreement with the Union which requires contributions to any of the Funds and any other business entity which is affiliated with such business and which either: 1) has employed persons who have performed the same type of work as the employees of the Employer covered by the Union agreement, or 2) is part of a group of trades or businesses "under common control," as that term is used in 29 U.S.C. §1301(b)(1) for withdrawal liability purposes, which includes the Employer.

24. The Trust Agreement requires an Employer to submit to audit in order to verify that all contributions required under the CBAs have been remitted to the Funds, that such contributions have been made solely on behalf of individuals eligible to participate in the Funds and that covered employees are receiving the required benefits and/or credits.

25. The Trust Agreement provides that the Trustees may "apply for and be entitled to a mandatory injunction directing an Employer to produce its said books and records for audit."

26. The Trust Agreement provides that an Employer determined to owe contributions by an audit is required to pay, in addition to the contributions due, interest, liquidated damages, attorney's fees, audit fees, filing fees, and costs.

Authorization for Estimated Audits to Calculate Contributions and Other Amounts Owing

27.     The Trust Agreement provides that an Employer who "fails to submit the required remittance reports and/or pertinent books and records for audit within twenty (20) days of written demand must pay an increased monthly contribution."

28.     The Trust Agreement further provides that the increased monthly contribution for which an Employer is liable is calculated by multiplying the applicable contribution rates by the total number of covered hours as determined by the methods described below.

29.     The Trust Agreement provides that, for the purpose of calculating increased monthly contributions for which an Employer is liable, the total number of covered hours is determined as follows:  (1) "by first adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) remittance reports submitted by the Employer (hereinafter referred to as the 'base month')"; (2) in the event that an audit discloses unreported hours for the base month, the amount of said unreported hours is increased by 10%  and then added to the number, if any, of reported hours in the base month (which is also increased by 10%) to arrive at the total number of covered hours in the base month; and (3) in the event that no base month can be identified because there are no previous remittance reports or audit reports, the Employer is deemed to have the number of employees that the Union reports in writing that the Employer is employing, and each employee is deemed to have worked 40 hours per week for the entire unreported period.

30.     The Trust Agreement provides that where an Employer:

> submits the required remittance reports, but thereafter such Employer fails to submit the pertinent books and records for audit within 20 days of written demand, such failure shall be a material breach of the Trust Agreement.  In such event the Trustees and/or their agents may compute the additional contributions due for any

- 7 -

month by taking 50 percent of the number of hours reported for that month and then multiplying said number of hours by the current contribution rate.

Underpaid Contributions

31.　　For the week ending October 1, 2016, Metropolitan Sewer underpaid contributions due to the Funds by $133.23.

32.　　Through various correspondences, the Funds requested payment of all outstanding contributions due.

33.　　To date, Metropolitan Sewer has failed to remit payment of the underpaid contributions.

Amounts Due on Contributions Paid Late

34.　　Metropolitan Sewer paid contributions late for various weeks between August 3, 2016 and February 28, 2017.

35.　　The Trust Agreement provides that the failure to promptly remit contributions due constitutes a violation of the CBAs and Trust Agreement.  The Trust Agreement further provides that in such instance, Metropolitan Sewer is obligated to remit interest, liquidated damages, attorney's fees and costs.

36.　　Through various correspondences, the Funds requested payment of amounts due as result of the late-payment of contributions for various weeks between August 3, 2016 and February 28, 2017.

37.　　To date, Metropolitan Sewer has failed to pay the interest, liquidated damages, attorney's fees and costs due on the late-paid contributions.

Audit

38.　　Following an examination of Metropolitan Sewer's books and records for the period from August 27, 2015 through September 21, 2016, the Trustees' auditor issued an

audit report (Audit # 17-0930-A1) reflecting that Metropolitan Sewer owes $25,238.63 in contributions to the Funds.

39. Through various correspondences, the Funds requested payment of the audited deficiency for the period from August 27, 2015 through September 21, 2016.

40. To date, Metropolitan Sewer has failed to remit payment of the audited deficiency for the period from August 27, 2015 through September 21, 2016.

The Failure to Allow an Audit

41. Metropolitan Sewer has failed to submit its books and records to audit for the period from September 22, 2016 through February 28, 2017.

Other Amounts

42. On information and belief, additional contributions, interest, liquidated damages, audit fees, and attorney's fees and costs may be due and owing by Metropolitan Sewer to the Funds for the relevant periods and are incorporated into this complaint.

The Withdrawal

43. On or around February 28, 2017, Metropolitan Sewer permanently ceased all operations for which contributions were owed to the Pension Fund and/or permanently ceased to have an obligation to contribute to the Pension Fund, thereby withdrawing from the Pension Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).

44. As a result of Metropolitan Sewer's complete withdrawal from the Pension Fund, Metropolitan Sewer became liable to the Pension Fund for withdrawal liability principal in the amount of $450,388.00, pursuant to Section 4201 of ERISA, 29 U.S.C. § 1381.

45. After determining the amount of withdrawal liability incurred by Metropolitan Sewer, the Pension Fund sent Metropolitan Sewer a letter dated December 14, 2018 (the "Notice and Demand").

46.     In the Notice and Demand, the Fund (a) informed Metropolitan Sewer of the amount of withdrawal liability principal and of the schedule for withdrawal liability payments and (b) demanded payment in accordance with the schedule , as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1).

47.     Pursuant to Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), and as provided in the Notice and Demand, Metropolitan Sewer was required to remit $5,395.19 each month, for 111 months, with a final payment in the amount of $1,345.12.  The first such monthly payment was due on or before January 1, 2019.

48.     The Notice and Demand also contained the following request:

> Pursuant to Section 4219(a) of ERISA (which provides that a contributing employer shall, within 30 days after a written request from the Plan sponsor, furnish such information as the Plan sponsor determines to be necessary to comply with the requirements of ERISA), it is hereby requested that the Company advised the undersigned within 30 days of the date of this Notice, whether it was (since December 31, 1974) a member of a trade or business "under common control" within the meaning of Sections 414 and 1563 of the Internal Revenue Code, and the regulations promulgated thereto (i.e., a "controlled group).  If the Company is (or was) a member of a controlled group, kindly furnish us with the corporate (or business) names and addresses of each organization in such controlled group.  Please also note whether any of these organizations contributed to the Fund at any time after December 31, 1974.

49.     Metropolitan Sewer failed to respond in writing to the Notice and Demand.

50.     Metropolitan Sewer failed to remit the first payment as required by the Notice and Demand.

51.     Metropolitan Sewer failed to identify any controlled group members as required by the Notice and Demand.

52.     At some point after receiving the Notice and Demand, Michael Lajqi, Metropolitan Sewer's co-principal, contacted the Pension Fund to inquire as to the Pension Fund's withdrawal liability demand.

53.     By letter dated January 22, 2019 (the "Notice of Default"), the Pension Fund notified Metropolitan Sewer that it had failed to make the first withdrawal liability payment when due and that, if such default was not cured within sixty (60) days, Metropolitan Sewer would be in default, within the meaning of ERISA Section 4219(c)(5), 29 U.S.C. § 1399(c)(5).

54.     More than sixty (60) days have elapsed since Metropolitan Sewer received the Notice of Default, and Metropolitan Sewer has failed to make any withdrawal liability payments, request further review of the withdrawal liability assessment, or initiate arbitration of the withdrawal liability assessment.

The Controlled Group

55.     Section 4001(b)(1) of ERISA provides in relevant part that "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).

56.     In determining whether entities are considered to be under "common control," ERISA and the regulations promulgated thereunder use the definition of "trades or businesses under common control" found in the Internal Revenue Code. 29 U.S.C. § 1301(b)(1); 29 C.F.R. § 4001.3(a)(1).

57.     Regulations issued under the Internal Revenue Code provide that a "brother-sister group of trades or businesses under common control" is one of the types of "trades or businesses under common control." 26 C.F.R. 1.414(c)-(2)(a). Two or more organizations constitute a "brother-sister group of trades or businesses under common control" if

(i) the same five or fewer individuals own a controlling interest in each organization, and

(ii) taking into account the ownership of each such person only to the extent such ownership is identical with respect to each such organization, such persons are in effective control of each organization.  26 C.F.R. 1.414(c)-(2)(c).

58.     A "controlling interest" in an organization includes, in the case of a sole proprietorship, ownership of such sole proprietorship, and in the case of a corporation or partnership, ownership of at least 80 percent of the total value of shares of all classes of stock of the corporation or at least 80 percent of the profits interests or capital interests of the partnership. 26 C.F.R. 1.414(c)-2(b)(2)(i).

59.     "Effective control" of an organization includes, in the case of a sole proprietorship, ownership of the sole proprietorship by one person, and in the case of a corporation or partnership, ownership of at least 50 percent of the total value of shares of all classes of stock of the corporation or at least 50 percent of the profits interests or capital interests of the partnership.  26 C.F.R. 1.414(c)-(2)(c)(2)(i).

60.     Upon information and belief, at the time of Metropolitan Sewer's February 28, 2017 withdrawal, Michael Lajqi owned 49% of Metropolitan Sewer, and Kuzma Kucic owned 51% of Metropolitan Sewer.

61.     Upon information and belief, at the time of Metropolitan Sewer's February 28, 2017 withdrawal, Lajqi and Kucic were the sole owners of Herschel.

62.     Upon information and belief, at the time of Metropolitan Sewer's February 28, 2017 withdrawal, Herschel owned the property from which Metropolitan Sewer operated.

63.     Upon information and belief, at the time of Metropolitan Sewer's February 28, 2017 withdrawal, Metropolitan Sewer paid Herschel $5,500 per month in rent. There was no lease between Metropolitan Sewer and Herschel.

64.     Accordingly, Herschel falls within Metropolitan Sewer's controlled group as that term is defined by the above-referenced statutes.

65.     At this time, it is unclear whether any other companies fall within Metropolitan Sewer's controlled group.

66.     Accordingly, defendant John Doe Companies 1-99 are fictitious defendants representing any other trade or business under common control with Metropolitan Sewer.

## COUNT I — ERISA

67.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

68.     Section 515 of ERISA, 29 U.S.C. §1145, requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement."

69.     Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title or the terms of the plan."

70.     Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), mandates that, "[i]n any action brought by a fiduciary on behalf of a Plan to enforce Section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan –

(a)     the unpaid contributions,

(b)     interest on the unpaid contributions,

(c)     an amount equal to the greater of –

(i)     interest on the unpaid contributions, or

(ii)    liquidated damages … in an amount not in excess of 20 per cent of the [unpaid contributions],

(d)     reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(e)     such other legal or equitable relief as the court deems appropriate …."

71.     Section 502(g)(1) of ERISA, 29 U.S.C. §1132 (g)(1), further provides that "[i]n any action under this subchapter [other than one described in 502(g)(2)] by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action…."

72.     Metropolitan Sewer, by virtue of its failure to submit Metropolitan Sewer's books and records to audit, are subject to an injunction ordering it to submit immediately to such audits and is required to pay the contributions due according to such audit, interest, liquidated damages, audit fees, attorneys' fees, and costs.

73.     Metropolitan Sewer, by virtue of their failure to submit its books and records to audit, is further liable for an increased monthly contribution for each month during the period for which the books and records were not produced.

74.     In accordance with the Trust Agreement, for each month in which an Employer failed to submit remittance reports and/or failed to submit pertinent books and records to the Funds' auditors within twenty days of written demand, the Employer's contribution rate due under the Trust Agreement provision is computed as stated therein.

75.     In accordance with the Trust Agreement, for each month in which an Employer did submit remittance reports but failed to submit pertinent books and records for audit within twenty days of written demand, the Employer's increased monthly contribution rate due under this Trust Agreement provision is computed as stated therein.

76.     Metropolitan Sewer is also required to pay interest, liquidated damages, audit fees, attorney's fees, and costs in accordance with the Trust Agreement and Section 502(g) of ERISA, 29 U.S.C. § 1132(g).

## COUNT II — ERISA

77.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

78.     Metropolitan Sewer's failure to pay (in certain instances timely) all contributions, interest, liquidated damages, and attorney's fees and costs owing to the Funds violates the CBAs and the Trust Agreement which is incorporated into the CBAs, and thus gives rise to an action under ERISA Section 515.

79.     The Funds are thus entitled under ERISA Section 502(g)(2) to unpaid contributions, interest on unpaid and late-paid contributions, liquidated damages on unpaid and late-paid contributions, attorney's fees and costs.

## COUNT III — LMRA

80.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

- 15 -

81.     Section 301 of the LMRA, 29 U.S.C. § 185(a), provides a federal cause of action for "[s]uits for violation of contracts between an employer and a labor organization."

82.     By failing to pay the contributions and other amounts owing, the Metropolitan Sewer has violated the CBAs and the Trust Agreement, which is incorporated into the CBAs.

83.     The Funds are thus entitled under LMRA Section 301(a) to the unpaid contributions, interest, liquidated damages, attorney's fees and costs.

## COUNT IV – ERISA

84.     Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs.

85.     By reason of their failure to make withdrawal liability payments, Metropolitan Sewer, Herschel, and John Doe Companies 1-99 are jointly and severally in default within the meaning of ERISA Section 4219(c)(5)(A), 29 U.S.C. § 1399(c)(5)(A), and the Pension Fund is entitled to immediate payment of the total amount of the withdrawal liability principal in the amount of $450,388.00, plus accrued interest, liquidated damages, and attorney's fees and costs pursuant to ERISA Sections 502(g)(2)(A), 502(g)(2)(B), 502(g)(2)(C), 502(g)(2)(D), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), 1132(g)(2)(B), 1132(g)(2)(C), 1132(g)(2)(D), and 1451(b), and the Trust Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter a judgment:

1.     Ordering Metropolitan Sewer to submit its books and records to audit for the period from September 22, 2016 through February 28, 2017;

2.     Ordering Metropolitan Sewer to pay (i) any delinquencies identified by the audit,  (ii) interest on the contributions at the rate of 18% per year, (iii) an amount equal to the

greater of (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the cost of the audit;

3.      Ordering Metropolitan Sewer to further pay (i) estimated contributions in an amount computed under the Trust Agreement for the period from September 22, 2016 through February 28, 2017, (ii) interest on the contributions at the rate of 18% per year, (iii) an amount equal to the greater of (a) interest on the unpaid contributions or (b) liquidated damages of 20 percent of the unpaid contributions, and (iv) the costs incurred in estimating the amounts due;

4.      Ordering Metropolitan Sewer to pay to the Funds (i) all delinquent contributions owed; (ii) interest on all delinquent and late-paid contributions at the rate of 18% per year; (iii) an amount of liquidated damages equal to the greater of (a) interest on the delinquent and late-paid contributions or (b) 20 percent of the delinquent contributions; and (v) the Funds' attorney's fees and costs;

5.      Ordering Metropolitan Sewer, Herschel, and John Doe Companies 1-99, collectively and individually, to pay the Pension Fund the sum of $450,388.00 for withdrawal liability principal pursuant to ERISA Sections 502(g)(2)(A), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), and 1451(b);

6.      Ordering Metropolitan Sewer, Herschel, and John Doe Companies 1-99, collectively and individually, to pay the Pension Fund (a) interest on the withdrawal liability at the rate of 18% per year; (iii) an amount of liquidated damages equal to the greater of (a) interest on the withdrawal liability or (b) 20 percent of the delinquent contributions; and (c) attorney's fees and costs on the withdrawal liability, pursuant to ERISA Sections 502(g)(2)(B), and 4301(b), 29 U.S.C. §§ 1132(g)(2)(B), and 1451(b), and the Trust Agreement; and

7.     Providing such other legal and equitable relief as the Court deems proper, including injunctive relief where warranted.

Dated: New York, New York
        April 8, 2019

_____

Joseph J. Vitale
Michael S. Adler
COHEN, WEISS AND SIMON LLP
900 Third Avenue, 21st Floor
New York, New York 10022-4869
(212) 563-4100

Attorneys for Plaintiffs